UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MELINDA S. COOK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> ) <br> Defendant. | CASE NO. 3:17-CV-552-MGG |

**OPINION AND ORDER**

Plaintiff Melinda S. Cook seeks judicial review of the Social Security Commissioner's decision that, as of February 16, 2015, she was no longer entitled to Title II disability insurance benefits ("DIB"), and Title XVI supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons below, the Court affirms the decision of the Commissioner of the Social Security Administration.

**I.     OVERVIEW OF THE CASE**

Cook alleges that the depressive condition that initially entitled her to disability benefits has not improved, and that she is thus entitled to continue receiving disability benefits. [DE 37 at 7]. In a decision dated July 15, 2008, Cook was found disabled as of August 16, 2004. Thus, initially, Cook was deemed eligible for disability benefits based

upon her severe impairment of depression, which met or equaled Listings 12.04 and 12.08. [DE 27 at 9]; *see also* 20 C.F.R. 404, Subpart P, App. 1.

However, after conducting a review of Cook's disability, as authorized by 20 C.F.R. § 404.1589, the Commissioner determined that Cook "was no longer disabled as of" February 16, 2015. [DE 21 at 23]. Cook filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), who determined that the claimant's disability had indeed ended on February 16, 2015, and that the claimant had not become disabled again thereafter. [*Id.* at 33]. The ALJ reached this conclusion because he found that Cook no longer had marked or extreme limitations in her functioning under the relevant paragraph B criteria, and thus her mental impairment no longer met or equaled any Listing, including 12.02, 12.04, or 12.08. [*Id.* at 27]. In reaching this decision, the ALJ also considered Cook's other severe impairments of borderline intellectual functioning, obesity, degenerative disc disease, and right elbow impairment. [*Id.* at 25–26]. While the ALJ found that Cook continued to have severe impairments, the ALJ also found that Cook had the residual functioning capacity ("RFC") to perform light work as defined in the regulations with some additional specified limitations.[1] [*Id.* at 28]. As a result, the ALJ affirmed the Commissioner's decision finding Cook no longer disabled. [*Id.* at 33].

## II. DISABILITY CESSATION STANDARD

As a preliminary matter, the Commissioner's response brief reflects an erroneous application of the five-step, initial disability analysis outlined at 20 C.F.R. § 404.1520 to

---

[1] Regulations governing applications for DIB and SSI are found in 20 C.F.R Part 404 and Part 416, respectively. For the sake of clarity and efficiency, this order will refer only to 20 C.F.R. Part 404.

Cook's case. In cases like Cook's, where the issue is whether the disability continues, an eight-step analysis, as outlined at 20 C.F.R. § 404.1594(f), applies. Notably, some steps in the eight-step disability review process are identical to steps in the five-step initial disability process, such as the Listing analysis and RFC determination. Therefore, the Commissioner's relevant arguments in her response brief can be considered here.

The eight-step inquiry in evaluating whether disability benefits continue is as follows:

> (1) Is the claimant engaged in substantial gainful activity? If so, his or her disability has ended. (2) If not, does the claimant have an impairment or combination of impairments that meet(s) or equal(s) the severity of a listed impairment? If so, the disability will be found to continue. (3) If not, has there been a medical improvement? If so, go to step (4). If not, go to step (5). (4) Is the medical improvement related to the claimant's ability to do work; *i.e.*, has there been an increase in the RFC? If not, go to step (5). If so, go to step (6). (5) If at step (3) there has been no medical improvement, or if at step (4) medical improvement is not related to ability to do work, do any exceptions apply? If one of the improvements from the first group of medical improvements applies, then look to step (6). If an exception from the second group applies, then the disability has ended. (6) Are the claimant's current impairments severe in combination? If not, the disability has ended. (7) If so, can the claimant (based on his or her residual functional capacity) perform his or her past relevant work? If so, the disability ends. (8) If not, can the claimant do other work given his or her residual functional capacity, age, education, and work experience? If so, the disability has ended.

*See* 20 C.F.R. § 404.1594(f).

The determination of whether disability benefits continue is made on a "neutral basis . . . without any initial inference" that the claimant's disability continues. 42 U.S.C.

3

§ 423(f)(4); 20 C.F.R. § 404.1594(b)(6). As a result, Cook is not entitled to a presumption of continuing disability. *See Frazee v. Berryhill*, No. 1:16cv329, 2017 U.S. Dist. LEXIS 122292 (N.D. Ind. Aug. 2, 2017) (citing *Soper v. Heckler*, 754 F.2d 222, 224 n.1 (7th Cir. 1985)) *aff'd*, 733 F. App'x 831 (2018). The claimant bears the burden of showing by medical evidence that she is disabled. *Mables v. Sullivan*, 812 F. Supp. 886, 888 (C.D. Ill. 1993) (citing *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)). Nevertheless, where the claimant was initially determined to be disabled, "it has been long established that, the 'Commissioner bears the burden in a continuing disability case of showing that the claimant has experienced medical improvement such that he can engage in substantial gainful activity.'" *Johnson v. Berryhill*, No. 1:17cv347, 2018 U.S. Dist. LEXIS 88592, at *25 (N.D. Ind. May 24, 2018) (quoting *Hickey v. Colvin*, No. 13 C 7857, 2015 U.S. Dist. LEXIS 82435 (N.D. Ill. June 25, 2015); *see also* 20 C.F.R. § 404.1594(b)(5); *Mables*, 812 F. Supp. 886 at 888.

### III. STANDARD OF REVIEW

This Court has authority to review the Commissioner's decisions regarding continuing disability under 42 U.S.C. § 405(g). However, this Court's role in the judicial review of Social Security Administration cases is limited, such that it cannot reweigh the facts or evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The ALJ's decision must demonstrate a "logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). The

4

deference for the ALJ's decision is lessened where the ALJ's findings contain error of fact or logic, or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Moreover, the ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ only selected and discussed evidence that favored his ultimate conclusion. *Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994)). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace a path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to her conclusions, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), the ALJ must at least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Consequentially, substantial evidence is "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

**IV.    ANALYSIS**

At Cook's request, the ALJ conducted a hearing on April 11, 2016, to consider whether she remains disabled and entitled to disability benefits. At the hearing, Cook testified regarding her mental and physical health issues. A vocational expert also testified about the availability of jobs in the national economy for a person with Cook's RFC, age, education and work experience.

**A.    ALJ's Conclusions**

Following the hearing, the ALJ issued a written decision based upon the eight-step disability review process finding that Cook was no longer disabled and affirming the Commissioner's decision to cease disability benefits. *See* 20 C.F.R. §404.1594(f). At Step One, the ALJ found that Cook was not engaged in substantial gainful activity. At Step Two, the ALJ found that Cook's mental impairments did not meet or equal the severity of Listings 12.02, 12.04, or 12.08. At Step Three, the ALJ found that Cook had experienced medical improvement. At Step Four, the ALJ found that the medical improvement was related to Cook's ability to work. The ALJ found that there had been an increase in Cook's RFC such that Cook could perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 6 of 8 hours and sit for 6 of 8 hours with no more than occasional climbing of stairs or ramps; no use of her arm for prolonged reaching; and perform work that could be learned in 30 days or less or by

6

demonstration and that did not require reading or mathematics beyond a 4th grade level.

Moving to Step Six, the ALJ found that Cook continued to have a severe impairment or combination of impairments because her current impairments caused more than minimal limitation in her ability to perform basic work activities. At Step Seven, the ALJ found that Cook had no past relevant work. Finally, at Step Eight, the ALJ found that Cook could nevertheless work in the national economy given her residual functional capacity, age, education, and work experience, and thus, her disability had ended. Specifically, a vocational expert testified that an individual in Cook's position would be able to perform the requirements of representative occupations such as Usher, School bus monitor, and Baker helper, which the ALJ used in ultimately determining that Cook was no longer disabled.

After receiving the ALJ's unfavorable determination dated June 10, 2016, Cook filed a request with the Appeals Council to review the decision. On May 18, 2017, the Appeals Council denied her request for review of the ALJ's decision. With the Council's denial of Cook's request, the ALJ's determination became the final decision of the Commissioner.

**B.      Issues for Review**

**1.      Right Elbow Impairment**

Cook contends that the ALJ erroneously claimed that the prior award of disability benefits was due to both depression and right elbow injury as opposed to the award being solely based on claimant's depression. Cook seems to be referencing the

7

ALJ's statement that "[a]t the time of the CPD, the claimant had the following medically determinable impairments: depression and right elbow injury requiring decompression and tendon release." [DE 21 at 25].[2] However, the Commissioner correctly explains that the ALJ's reference to the elbow injury merely acknowledged a physical impairment present at the time of the initial ALJ hearing without concluding that the elbow injury was the reason Cook qualified for benefits originally. Moreover, the record here amply indicates that Cook had an elbow impairment at the time of the CPD even if the initial ALJ did not reference it in the original decision. [*See, e.g.*, DE 21 at 884–86]. Furthermore, as this is a continuing disability case, the ALJ was charged with assessing changes in the severity of Cook's impairments since the CPD based on the entire record. *See* C.F.R. § 404.1594(b)(7). Thus, any error by the ALJ in describing the role of Cook's elbow impairment in the original ALJ's opinion was not prejudicial and need not be addressed.

## 2. Continuing Diagnosis of Persistent Depressive Disorder

Cook also agues that the ALJ did not adequately explain the dichotomy between his conclusion that Cook's disability had ended and the finding by the consultative examiner, Dr. Jean Badry, that Cook had persistent depressive disorder. Cook notes that the ALJ gave "considerable weight" to Dr. Badry's opinion, but nevertheless found that Cook was not disabled for purposes of receiving disability benefits. Cook protests the

---

[2] CPD is shorthand for "comparison point decision." [DE 21 at 25]. The CPD is the most recent favorable medical decision finding that the claimant was disabled. *See* 20 C.F.R. § 404.1594(b)(7) (explaining that the most recent favorable medical decision will be used as the point of comparison for a continuing disability determination).

8

ALJ's conclusion arguing that Dr. Badry's new diagnoses of obesity borderline personality disorder suggest a decline in her condition because her severe depression diagnosis remains unchanged. Yet Cook never explains how Dr. Badry's diagnoses alone established the continued existence of a severe impairment that precluded Cook from performing work activities. Indeed, the mere existence of diagnoses and symptoms does not require the ALJ to find that Cook suffered disabling impairments. *See Skinner v. Astrue*, 478 F.3d 838, 845 (7th Cir. 2007). Rather, the ALJ must examine whether Cook is still disabled as defined by the Social Security Act such that she is entitled to disability benefits. And that is exactly what the ALJ did, as outlined below.

As relevant here, the ALJ properly began the eight-step disability review process defined in the regulations by determining that Cook had not engaged in substantial gainful activity—Step One. Cook agrees with this conclusion by the ALJ. The ALJ's decision next turned to the question of whether Cook's mental impairments met a Listing for either an organic mental disorder or an affective disorder under 20 C.F.R. 404, Subpart P, App. 1 § 12.02 or 12.04—Step Two. The ALJ concluded that Cook's impairments no longer met or equaled a Listing. The ALJ then turned to the question of whether there had been any medical improvement in Cook's impairments—Step Three. The ALJ relied on his Listing conclusion to support his conclusion that "there had been a decrease in medical severity of [Cook's] impairments." [DE 21 at 27]. As a result, the key question before this Court is whether the ALJ's conclusion that Cook's impairments no longer met or equaled a Listing is supported by substantial evidence, which will

then determine whether his conclusion about medical improvement is also supported by substantial evidence.

To meet a Listing for a mental impairment, a claimant must be diagnosed with a condition defined in 20 C.F.R. Part 404 App. 1, such as a depressive disorder, and must also meet the "paragraph B" or "paragraph C" criteria set forth in the regulations.[3] Cook only challenges the ALJ's paragraph B analysis. Therefore, the Court need not address the paragraph C analysis here.

To meet the paragraph B criteria, a claimant needs to show her mental impairment resulted in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See, e.g.*, 20 C.F.R. Part 404 App. 1 § 12.04(B). "A marked limitation means more than moderate but less than extreme." 20 C.F.R. Part 404 App. 1 § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ considered the extent of Cook's mental impairments by examining the paragraph B criteria one at a time. [DE 21 at 26]; *see also* 20 C.F.R. Part 404 App. 1

---

[3] As of January 17, 2017, new criteria were adopted for the evaluation of mental disorders. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138 (Sept. 26, 2016) (to be codified at 20 C.F.R. Pts. 404 and 416). All citations to the paragraph B criteria in this opinion are to those criteria that were in effect at the time of the ALJ's decision.

§§ 12.02(B); 12.04(B). The ALJ first assessed Cook's activities of daily living, which include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Part 404 App. 1 § 12.00(C)(1). The ALJ concluded that Cook's impairments only placed a mild restriction on her activities of daily living. In support, the ALJ noted Cook's Adult Function Report dated October 14, 2015, in which she stated that she had no problem with personal care, but there were days when she needed assistance with dressing or brushing her hair. Additionally, the ALJ cited the testimony of Cook's witness, who stated that Cook took care of her three grandkids four days a week but had to rest regularly when trying to do housework. The ALJ then referenced notes from Dr. Badry's Mental Status Examination of Cook on February 9, 2015, including Cook's report that her husband went with her to the grocery store, but she managed the family's finances and Dr. Badry's observation that Cook's daily activities were simple and her ability to sustain depended on her pain level and mood.

Through this analysis, the ALJ articulated a 'logical bridge' to his conclusion by taking into account a wide range of evidence, including Cook's testimony, the testimony of her own witness, and Dr. Badry's observations, showing both Cook's abilities and limitations. *See Minnick*, 775 F.3d at 935. In so doing, the ALJ presented more than a mere scintilla of evidence that a reasonable person might accept as adequate to support the conclusion. *See Richardson*, 402 U.S. at 401; *Summers*, 864 F.3d at

526. Therefore, the ALJ's assessment of the restriction of Cook's activities of daily living is supported by substantial evidence.

Under paragraph B, the ALJ was also required to consider any difficulties in Cook's social functioning. 20 C.F.R. § Part 404 App. 1 §12.00(C)(2). "Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id*. A claimant "may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Id.* In considering Cook's social function, the ALJ again cited her Adult Function Report in which she stated that she occasionally lost her temper, but that she nevertheless regularly talked on the phone with her mother or friend. The ALJ also mentioned Cook's claim that, due to her impairments, she did not do many social activities any more. The ALJ also recognized Dr. Badry's note that Cook's ability to interact with her was good and referenced the fact that a friend accompanied Cook to the ALJ hearing.

Again, the ALJ demonstrated that he had balanced a range of evidence regarding Cook's abilities and challenges before concluding that Cook's impairments resulted in mild difficulties with regards to social functioning. Thus, the ALJ developed a logical bridge from the evidence to his conclusion such that his assessment of Cook's social functioning is supported by substantial evidence. *See Thomas*, 745 F.3d at 806.

The third criterion the ALJ considered in determining whether Cook's mental impairments meet or equal a Listing is concentration, persistence, and pace. 20 C.F.R. § Part 404 App. 1 §12.00(C)(3). "Concentration, persistence, or pace refers to the ability to

12

sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* "Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion." *Id.* The ALJ noted Dr. Badry's observation that during the consultative exam, Cook was able to repeat five digits forwards and three digits backwards, recited serial 7s from 100 with six errors, and was able to spell the word "world" both forwards and backwards. The ALJ recognized that Cook's immediate, recent, and remote memory were intact for some things and very poor for others. The ALJ also accounted for the fact that Dr. Badry had concluded Cook's cooperation, pacing and persistence were good, her attention span and listening skills were adequate, and she needed no elaboration of instructions during the examination. Nevertheless, Cook had been diagnosed with borderline intellectual functioning, so the ALJ found that Cook had moderate difficulties in this area.

While Cook appears to disagree with the ALJ's conclusion regarding her concentration, persistence, and pace, the record is clear that the ALJ considered—once again—evidence of both Cook's abilities and limitations in this category before concluding that her difficulties did not rise to the level of being marked. *See Summers*, 864 F.3d at 526. Therefore, the ALJ supported his assessment of Cook's concentration, persistence, and pace with substantial evidence.

At the final step of the Listing analysis, the ALJ found that Cook had experienced no episodes of decompensation of extended duration. This finding is not contested by the claimant. Thus, since claimant's mental impairments did not cause at least two

marked limitations or one marked limitation along with repeated episodes of decompensation, the ALJ ruled that the paragraph B criteria were not satisfied, and that Cook did not meet or equal a Listing for 12.02 or 12.04[4]—a conclusion supported by substantial evidence as discussed above. *Thomas*, 745 F.3d at 806.

Having determined that the ALJ supported his conclusion that Cook no longer meets or equals the mental impairment Listing that qualified her for disability benefits originally or any other Listing, the Court is not persuaded by her contention that she has experienced no medical improvement. In fact, the ALJ's Listing analysis alone is sufficient to meet the Commissioner's burden of showing that Cook experienced medical improvement. *See Johnson*, 2018 U.S. Dist. LEXIS 88592, at *25 (citing 20 C.F.R. § 404.1594(b)(5)). As part of his Listing analysis, the ALJ shows that the effects of Cook's depressive disorder no longer manifest enough marked limitations to automatically qualify her as "disabled" under the Social Security Act. In other words, the effects of Cook's impairments are not as limiting as they were when she was originally awarded benefits—the equivalent of medical improvement. Accordingly, the ALJ has supported his conclusion that Cook experienced medical improvement with substantial evidence and proceeded to an RFC determination, which Cook only challenges on a minimal basis addressed and rejected below.

### 3. Relitigation and Comparison to Original Findings

---

[4] While the ALJ's analysis focused on 12.02 and 12.04 of the Listings, there was nevertheless substantial evidence that 12.08 did not apply either, since the paragraph B and C criteria for all these Listings were essentially the same, and to qualify for a Listing, at least the paragraph B or the paragraph C criteria must be met. *See* [DE 21 at 27]; 20 C.F.R. Part 404 App. 1 §§ 12.02(B), 12.04(B), 12.08(B).

14

Cook also contends that the ALJ cited no evidence contradicting the records presented to the previous ALJ, and thus improperly "relitigate[d] the previous determination." [DE 37 at 5]. Moreover, Cook contends that in order for the Commissioner to meet her burden of showing that medical improvement related to ability to work occurred, the ALJ would necessarily have to highlight the findings made by the previous ALJ and then explain how those conditions have improved.

Through this argument, Cook seems to misunderstand the ALJ's burden on behalf of the Commissioner in this disability benefits review. When deciding whether cessation of disability benefits is appropriate due to medical improvement, an ALJ does not presume a claimant is disabled based on a prior determination of disability. 20 C.F.R. § 404.1594(b)(6); *see also Frazee*, 2017 U.S. Dist. LEXIS 122292 (citing *Soper*, 754 F.2d at 224 n.1). Rather, the burden remains on the claimant to prove she is disabled, while the Commissioner bears the burden of showing that medical improvement has occurred such that she is now able to engage in substantial gainful activity. *Mables*, 812 F. Supp. At 888. Thus, not only did the ALJ not err by looking at the case afresh from the prior disability determination, the ALJ was mandated to do so.

Moreover, Cook cites no authority requiring the ALJ to make a point-to-point comparison with the prior determination of disability. Nevertheless, the regulations do dictate that decisions in these instances "be made on a neutral basis," with the ultimate determination of whether a disability continues being made on "the basis of the weight of the evidence." 20 C.F.R. § 404.1594(b)(6). This would seem to counteract Cook's that the ALJ erred in reweighing the evidence from the original adjudication included in the

record before him. Additionally, medical improvement may be determined by changes in signs, symptoms, or laboratory findings associated with impairments. 20 C.F.R. § 404.1594(c)(1). And since, as previously mentioned, the ALJ examined Cook's current symptoms and determined they no longer meet a Listing, logic makes the ALJ's conclusion that medical improvement has occurred reasonable.

### 4. Medications

Finally, Cook claims that the ALJ makes no mention of the medications that Cook is currently taking and their impact on her ability to do work, the issue at play in the RFC analysis. Cook also contends that her medication regimen, its scope and effect, speaks to her alleged lack of medical improvement. While it is true that the ALJ did not discuss Cook's medications in the Listing or medical improvement sections of his decision, he did consider the effect of medication on Cook's ability to work in his RFC analysis. The ALJ explicitly noted that in November of 2014, Cook reported that her pain levels were manageable with her current medication, and that her pain medication was not causing negative side effects such as nausea, vomiting, constipation, dependency, cognitive or coordination problems. [DE 21 at 31]. Additionally, the ALJ referenced Cook's report that she experienced no side effects from medications she was taking for other conditions. [*Id.*].

Even if the ALJ should have discussed Cook's medications in his Listing or medical improvement analysis, Cook does not refer to any evidence in the record that would show the specific effect of those medications on her activities of daily living, social functioning, or concentration, persistence, and pace—the criteria defining

whether Cook's impairments meet or equal a Listing and, consequently, whether there was any medical improvement in her impairments as discussed above. Instead, Cook suggests generally that the medications she was prescribed could affect an individual's ability to work. Without more from the record, the Court is not persuaded that the ALJ erred by failing to mention Cook's medications in the Listing and medical improvement sections. *Cf. Skinner*, 478 F.3d at 845 ("the existence of . . . diagnoses and symptoms does not mean the ALJ was required to find that [the claimant] suffered disabling impairments"). In fact, the ALJ's consideration of Cook's medications in his RFC analysis suggests he was fully aware of them throughout his entire analysis. Therefore, even if the omission could be considered error, a proposition Cook cites no legal authority for support, Cook was not prejudiced by the ALJ's failure to explicitly discuss them in the Listing and medical improvement sections of his decision. Thus, the Court's finding above that the ALJ's medical improvement conclusion is supported by substantial evidence is not undermined by the ALJ's approach to Cook's medications.

## V.   CONCLUSION

For the reasons stated above, the Court now **AFFIRMS** judgment of the Commissioner. The Clerk is **ORDERED** to enter judgment in favor of the Commissioner.

**SO ORDERED** this 8th day of March 2019.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge